**Tagged Opinion**



ORDERED in the Southern District of Florida on May 23, 2013.

*Laurel M. Isicoff, Judge*
**United States Bankruptcy Court**

_____

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
*Miami Division*
www.flsb.uscourts.gov

In re:

National Litho, LLC                                  Case No. 12-27566-LMI

      Debtors.                                  Chapter 7
_____/

**ORDER GRANTING NATIONAL ACQUISITION, LLC'S MOTION AND REQUEST FOR ALLOWANCE AND PAYMENT OF PRIORITY CLAIM FOR POST-PETITION EXTENSION OF CREDIT TO DEBTOR IN POSSESSION (ECF # 341)**

This matter came before the Court on March 11, 2013 upon the Motion and Request for Allowance and Payment of Priority Claim (ECF #341) filed by National Acquisition, LLC (the "DIP Lender"). This Court has reviewed the Motion, the DIP Lender's Memorandum of Law in

Support of the Motion (ECF #354), the Opposition and Objection to the Motion by the Chapter 7 Trustee of the Bankruptcy Estate of National Litho, LLC (the "Chapter 7 Trustee") (ECF #358) and Opposition and Objection to the Motion by Lake Holdings, LLC ("Lake Holdings") (ECF #359).  The Court having considered the pleadings, the applicable case law, the history of the case, and argument of counsel, grants the DIP Lender's Motion.

*Introduction*

This Motion presents what appears to be an issue of first impression for this Court.  That is, what effect, if any, does the conversion of a bankruptcy case – from a chapter 11 case to a chapter 7 case – have on the 11 U.S.C. §364(c)(1) "super-priority" administrative claim of a chapter 11 debtor in possession ("DIP") lender.  This Court must decide if conversion subjects the "super-priority" status granted to the DIP Lender pursuant to section 364(c)(1) to the priority provisions of 11 U.S.C. §726(b), placing the administrative claims of the Chapter 7 Trustee above the DIP Lender's section 364(c)(1) claim.  This Court answers the question in the negative, and holds that conversion does not impact the priority of a chapter 11 super-priority claim granted under section 364(c)(1), whether or not it is viewed as an administrative claim.[1]

*Procedural and Factual Summary*

On July 22, 2012, the Debtor, National Litho, LLC (the "Debtor") filed this case under chapter 11. The Debtor then sought post-petition financing.  On October 19, 2012, the Debtor filed an Emergency Motion (ECF #166) seeking to establish the DIP financing allowing the

---

[1] Several courts have held that the "superpriority" status afforded a DIP lender under section 364(c)(1) is not an administrative claim. *See Official Comm. of Unsecured Creditors v. Bank of America, N.A. (In re Fleetwood Enter., Inc.)*, 471 B.R. 319 (9th Cir. BAP 2012); *In re Mayco Plastics, Inc.*, 379 B.R. 691 (Bankr. E.D. Mich. 2008).  *See also, In re Energy Coop., Inc.* 55 B.R. 957 (Bankr. N.D. Ill. 1985).  This is not an issue this Court needs to decide because the Final Order specifically described the protections provided to the DIP Lender as "a super priority administrative expense claim." Based on this Court's analysis, this distinction is not meaningful, but the Court notes that if the status afforded a DIP lender under section 364(c)(1) is not an administrative claim, then the priority of such status over chapter 7 administrative claims allowable under 11 U.S.C. §503(b) should be even less a matter of dispute.

2

Debtor to borrow up to $200,000.00. The Debtor requested the authority to grant the DIP Lender a section 364(c)(1) super-priority administrative claim with priority over any and all administrative expenses subject to a limited carve out, in order to secure this financing.

This Court entered Interim Orders (ECF ##179, 180, and 199) granting the Debtor's request to obtain post-petition financing as contemplated under the Emergency Motion.

On December 4, 2012, this Court entered a Final Order (the "Final Order") approving the October 19, 2012 DIP Financing Agreement between the DIP Lender and the Debtor. The Final Order provided in pertinent part:

> The DIP Loan described in the DIP Motion is APPROVED on a *final basis* and National Litho has authority to take all actions under the DIP Loan and may grant Southeastern Printing or its assignee (the **"DIP Lender"**) a super priority administrative expense claim, pursuant to Bankruptcy Code Section 364(c)(1), in respect of the DIP Loan with priority over any and all administrative expenses, subject and subordinate to the following:
>
> > i. ExpoCredit – any obligations owed to ExpoCredit pursuant to its prepetition or post-petition Factoring Agreements, and the administrative expense, superpriority administrative claim and first priority lien set forth in the Orders issued by this Court; and
> >
> > ii. Carve Out – The Carve-out for professionals and the United States Trustee Fees in the amount of $120,000 established and set forth in the Orders issued by this Court.
>
> National Litho is AUTHORIZED to execute the financing arrangement with the DIP Lender as set forth above in paragraph 2, and is AUTHORIZED to incur the obligations and pay all amounts contemplated to be paid under and related to the credit facility in the aggregate amount of up to $200,000 without further Order of this Court.

(ECF #248).[2] Two days after the entry of the Final Order, the Court – at the Debtor's request – converted the Debtor's bankruptcy from a chapter 11 case to a chapter 7 case (ECF #250).

---

[2] Interim Orders (ECF ##179, 180, and 199) contained the same language. Those Orders granted the DIP Lender a super-priority administrative claim under section 364(c)(1) with priority over any and all administrative expenses subject to and subordinate only to ExpoCredit's Factoring Agreements and the Carve Out.

The DIP Lender filed its Motion for Allowance and Payment of Priority Claim (ECF # 341) on February 6, 2013. The Chapter 7 Trustee and Lake Holdings objected to the DIP Lender's claim (ECF ##358 and 359). This Court must now determine the allowance and priority of the DIP Lender's claim.[3]

*Analysis*

As set forth in the Final Order, the DIP Lender was granted a super-priority administrative claim under section 364(c)(1) of the Code. The Final Order provides that this claim has "<u>priority over any and all administrative expenses</u>" (emphasis added) except for the claim of ExpoCredit (the "Factor") and the limited Carve Out. Whether "any and all administrative expenses" includes chapter 7 administrative expenses is resolved by looking at the language of the United States Bankruptcy Code (the "Bankruptcy Code").

Section 364(c)(1) provides:

If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt –

>  (1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title….

The various claims identified in section 503(b) are afforded administrative status by the Bankruptcy Code. Claims under section 507(b) arise when the adequate protection afforded to a lienholder under sections 362, 363, or 364 turns out not to be so adequate. In such a case, the adequacy shortfall, as it were, entitles the creditor to "a claim allowable under subsection (a)(2) of this section [507(a)(2) – meaning the creditor shall have a section 503(b) administrative claim]" and "such creditor's claim under such subsection [that is, section 507(a)(2)] shall have priority over every other claim allowable under such subsection." In other words, the Bankruptcy

---

[3] The Court has not been asked to rule on the amount of the claim, but only its priority with respect to chapter 7 administrative claims.

Code makes "clear" that the claim of a creditor created under section 364(c)(1) will have priority over every kind of administrative claim allowed under section 503(b).

When a bankruptcy case is converted to a case under chapter 7, section 726(b) creates another level of priority amongst section 503(b) administrative claims.

> Payment on claims of a kind specified in paragraph (1), (2), (3), (4), (5), (6), (7), (8), (9), or (10) of section 507 (a) of this title, or in paragraph (2), (3), (4), or (5) of subsection (a) of this section, shall be made pro rata among claims of the kind specified in each such particular paragraph, except that in a case that has been converted to this chapter under section 1112, 1208, or 1307 of this title, a claim allowed under section 503(b) of this title incurred under this chapter after such conversion has priority over a claim allowed under section 503(b) of this title incurred under any other chapter of this title or under this chapter before such conversion and over any expenses of a custodian superseded under section 543 of this title.

In other words, any section 503(b) administrative claim arising in the chapter 7 case shall have priority over any section 503(b) claim arising in the pre-conversion case.

But nothing in section 726(b) provides that a chapter 7 section 503(b) claim has priority over a claim arising under section 364(c)(1), whether that claim is termed an "administrative claim" or just a "claim." Thus, the answer is clear, and the Bankruptcy Code, while convoluted, is unambiguous – the fact of conversion itself has no impact on the priority of the section 364(c)(1) claim over all section 503(b) claims whenever or however created.[4]

---

[4] As noted by the court in *In re Energy Coop, Inc.*:

> "Superpriority" is a term not defined in the Bankruptcy Code; it is used to describe a claim which, under applicable bankruptcy law and pursuant to court order, is to be paid ahead of some or all administrative expenses, and possibly ahead of secured creditors. A superpriority may be created in two ways: (1) under §507(b), when a secured creditor seeks and is granted adequate protection, and such adequate protection subsequently proves to be inadequate, the secured creditor is entitled to a superpriority for the amount of the deficiency, i.e., the amount by which he has been damaged by the continuation of the stay, the use of his collateral, or the like; and, (2) under §364(c)(1) and (d), the court may grant a creditor a superpriority in order to induce such creditor to lend post-petition operating funds to the debtor. In addition, under 726(b), when a chapter 11 case is converted to a case under chapter 7, the chapter 7 expenses of administration take precedence over chapter 11 expenses of administration; thus

The Chapter 7 Trustee and Lake Holdings argue that because the policy objectives underlying section 726(b) outweigh those of section 364(c)(1), and, notwithstanding the plain language of the Bankruptcy Code, section 726(b) should be read to require that post-conversion chapter 7 administrative expenses must be given priority over pre-conversion super-priority claims. The Chapter 7 Trustee and Lake Holdings rely on *In re Sun Runner Marine, Inc.*, 134 B.R. 4 (9th Cir. BAP 1991) ("*Sun Runner*") and *In re Summit Ventures, Inc.*, 135 B.R. 478 (Bankr. D. Vt. 1991) ("*Summit Ventures*").

*Sun Runner* is factually distinguishable from this case. In *Sun Runner,* the creditor was granted a first priority security interest in the debtor's post-petition assets as adequate protection for the debtor's use of the creditor's cash collateral. The adequate protection was inadequate, and the creditor moved for, and was granted, a priority claim under section 507(b) of the Bankruptcy Code. 134 B.R. at 5. The debtor's case was then converted from chapter 11 to chapter 7. *Id.* Thus, the Court was asked to decide "[w]hether a Chapter 7 administrative expense claim has priority over a pre-conversion Chapter 11 administrative expense claim entitled to superpriority under section 507(b)." *Id.*

*Sun Runner* answered this question affirmatively. *Id.* at 7. The court held that as section 503(b) is the underlying basis for claims entitled to priority under section 507(b), therefore, such claims fall within the scope of the plain language of section 726(b). *Id.* This Court agrees that if the DIP Lender's claim arose under section 507(b) that it would be subject to section 726(b).

---

> the chapter 7 expenses of administration are occasionally referred to as having superpriorty status. The superpriority obtained pursuant to § 364(c)(1) and (d) will prime a superpriority obtained pursuant to §507(b); while in turn, a superpriority obtained pursuant to §507(b) will prime superseding chapter 7 administrative expenses entitled to priority under §726(b).

55 B.R. at 963 n. 20 (citations omitted) (emphasis added).

6

However, because the DIP Lender's claim in this case arises under section 364(c)(1), and not section 507(b) or section 503(b), *Sun Runner* is inapplicable.

In *Summit* the creditor in a chapter 11 case was granted claims and liens under sections 364(c)(1), (2), and (3) to secure its post-petition loans to the debtor. When the case was converted to chapter 7, the DIP lender argued, as the DIP Lender does here, that the priority afforded to it under section 364(c) was unaffected by section 726(b). Conflating all administrative claims and conflating all "super-priority claims" the *Summit* court held that, pursuant to section 726(b) the chapter 7 super-priority claims took precedence over the chapter 11 super-priority claims. *Summit* based its decision on policy grounds. *Id.* at 483. The court recognized that allowing section 364(c)(1) claims to maintain priority over post-conversion chapter 7 administrative expenses encourages creditor financing to chapter 11 debtors. On the other hand, recognizing the priority of chapter 7 administrative expenses ensures a complete administration of the chapter 7 estate. *Id.* The court found that a present need to administer a chapter 7 case trumps the needs of a failed chapter 11 case. *Id.* Thus, the court concluded that, as a matter of policy, the chapter 7 administrative expenses should be paid first.

The analysis of the *Summit* court is wrong. The Bankruptcy Code is unambiguous and a court may not rely on a policy argument to vary the Bankruptcy Code's plain language. *Bracewell v. Kelley (In re Bracewell)*, 454 F.3d 1234, 1240-1241 (11th Cir. 2006) ("The Supreme Court and this Court have warned on countless occasions against judges 'improving' plain statutory language in order to better carry out what they perceive to be the legislative purposes.") (citations omitted).

The DIP Lender relies on *Vafer Inv. Group, LLC v. Case (In re Visionaire Corp.),* 299 B.R. 530 (8th Cir. BAP 2003). The case is correctly decided but fact specific, and has no

bearing on this Court's analysis except to underscore that the language of the Final Order and the Bankruptcy Code govern the rights of the DIP Lender in this case.  The language of the Final Order is clear: the DIP Lender has priority over (a) any and all administrative expenses other than those held by the Factor and (b) the Carve Out.  The DIP Lender advanced funds under the Final Order.  The Final Order did not include a carve out for chapter 7 administrative expenses.

The Trustee also argues that the DIP Lender's claim should not be allowed to take priority over chapter 7 administrative expenses because the DIP Lender waited so long to assert its right to payment to the detriment of chapter 7 professionals and other administrative claimants. While this Court agrees that the DIP Lender could have acted sooner, the Court is unaware of any Bankruptcy Code provision or case law that would support such relief. Moreover, whether or not the DIP Lender asserted its claim now or earlier in the case, the Chapter 7 Trustee was still obligated to perform his administrative tasks, which, of course, he has.

### *Conclusion*

In the absence of language in an applicable order to the contrary, the conversion of a bankruptcy case to a case under chapter 7 does not impact the priority of a pre-conversion claim granted under 11 U.S.C §364(c)(1). The DIP Lender's rights to its claim and its priority are controlled by the Final Order and the Bankruptcy Code. Accordingly, it is **ORDERED** as follows:

a) National Acquisition, LLC is entitled to a super-priority administrative claim under 11 U.S.C. §364(c)(1) in the sum of $199,633.86 plus, subject to notice and hearing, attorney's fees and costs[5];

b) National Acquisition, LLC's claim will be paid in accordance with the Final Order (ECF #248).

c) National Acquisition, LLC's claim has priority over any administrative expenses allowed under section 503(b) or section 507(b) of the Bankruptcy Code.

###

**Copies Furnished To:**
Michael B. Green, Esq.
Arthur Neiwirth, Esq.
Paul Orshan, Esq.
Patricia Redmond, Esq.

*Attorney Green is directed to serve copies of this Order on all parties in interest and to file a Certificate of Service.*

---

[5] The Court has not been provided a copy of the fees and costs requested, all of which must be reasonable. The DIP Lender must provide the necessary information to the appropriate parties in interest, and, ultimately to the Court, for final determination.